# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § § | Case No. 4:17-CR-00038-ALM-1 |
| SERVANDO PINEDA-VALDEZ, | § § | |
| *Defendant.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. §3582(c)(1)(A)(i) (Dkt. #176) and Motion for Sentence Reduction and Reconsideration Under 18 U.S.C. § 3582(c)(2) Based on Amendment 821 and Correction of Drug Quantity (Dkt. #178) (together, the "Motions"). Having considered the Motions and the relevant pleadings, the Court finds that the Motions should be **DENIED**.

## BACKGROUND

On March 8, 2017, a Federal Grand Jury for the Eastern District of Texas indicted Servando Pineda-Valdez ("Defendant") with a charge of Conspiracy to Possess with Intent to Distribute 5 Kilograms or more of cocaine in violation of 21 U.S.C. § 846 (Dkt. #87 at p. 3).

On July 19, 2017, Defendant appeared before U.S. Magistrate Judge Kimberly Priest Johnson, pleading guilty to the indictment, pursuant to a non-binding Plea Agreement (Dkt. #87 at p. 3). Defendant also signed a Factual Basis that summarized his criminal conduct and supported the stipulations contained in the Plea Agreement (Dkt. #87 at p. 3).

On August 8, 2017, the Court issued an Order Adopting United States Magistrate Judge's Report, finding Defendant guilty as to the one-count indictment (Dkt. #53). The Court deferred

acceptance of the Plea Agreement, pending a review of the presentence report (Dkt. #87 at p. 4; Dkt. #53).Within the presentence report, the probation officer adjusted Defendant's offense level +2, pursuant to U.S.S.G. § 2D1.1(b)(1), finding the defendant responsible for the co-defendant's possession of a firearm in the drug; +2 pursuant to § 3B1.1(c) based on Defendant's significant role in organizing the transaction; and -3 pursuant to U.S.S.G. § 3E1.1(a) and (b) for accepting responsibility for his misconduct (Dkt. #87 at p. 6-7).

Defendant filed two objections to the presentence report (Dkt. #87 at pp. 12-15). On February 26, 2018, the probation officer filed two addendums, determining that the objections were not supported by the facts of the case (Dkt. #87 at pp. 12–16). The Court did not modify the presentence report. Defendant also filed a motion to withdraw his guilty plea, prompting the Court to remove the 3-level reduction for acceptance of responsibility (Dkt. #89). On February 28, 2018, Defendant was sentenced to 168 months of imprisonment and 5 years of supervised release for conspiracy to possess with intent to distribute cocaine under 21 U.S.C. §§ 846 and 841(b)(1)(A) (Dkt. #89).

On May 10, 2025, Defendant submitted a request for compassionate release to Warden R. Thompson (Dkt. #176-1 at p. 3). On August 28, 2025, Defendant filed a Motion to Reduce Sentence pursuant to 18 U.S.C. §3582 (c)(1)A)(i) (Dkt. #176 at p. 1). The motion detailed that Defendant was susceptible to serious health concerns while in confinement (Dkt. #176 at pp. 3-4).[1] On September 24, 2025, the U.S. Probation Office sent a letter to the Court, recommending that compassionate release be denied.[2]

---

[1]  Defendant also submitted a supplemental notice in support of his first motion for compassionate release (Dkt. #177).

[2]  The United States Probation Office noted its opposition to this request for compassionate release in a letter sent to the Court on September 24, 2025.

On March 16, 2026, Defendant filed another motion for compassionate release and motion to reconsider (Dkt. #178 at p. 1). Specifically, Defendant requests "retroactive application of Amendment 821," despite the Court's previous denial of relief on this same basis (Dkt. #178 at p. 1). However, Defendant suggests that there was an improper application of the firearm enhancement, considering the record's lack of evidence displaying Defendant's knowledge or foreseeability of the firearm (Dkt. #178 at p. 1). Additionally, Defendant asks the Court to remove the aggravating role enhancement, due to an alleged lack of proof of Defendant's "sustained authority or [place in] the hierarchy" within the drug operation (Dkt. #178 at p. 2).

The Motions are now ripe for adjudication.

## LEGAL STANDARD

### I.    18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A)    the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they

3

are applicable, if it finds that—

(i)    extraordinary and compelling reasons warrant such a reduction; or

(ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[3]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons] . . . ." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

---

[3]    This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); and then *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[4] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request

---

[4]  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *Garrett*, 15 F.4th at 338).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam) (unpublished) ("Because the statutory language is mandatory . . . we must enforce this procedural rule . . . ."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend County. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III.    U.S.S.G.'s Policy Statement

### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D).

6

First, whether the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "managed effectively by medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (per curiam) (unpublished) (citation modified).

Third, whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[5] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F. Supp. 3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

---

[5] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[6] the United States Centers for Disease Control and Prevention,[7] and the U.S. Federal Government,[8] have made clear that the COVID-19 pandemic has ended.[9] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.      Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.      Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)      The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[6]  *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[7]  End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[8]  *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[9]  *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

(B)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D) (emphasis added).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) ("Without medical evidence [of the] father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Romano*, 707 F. Supp. 3d at 237–38. The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez*, No. 23-50404, 2024

11

WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).

### D.    Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. §§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.    Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. §§ 1B1.13(b)(1)–(4). *Id.*

12

§ 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing

Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[10] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *Rollins*, 53 F.4th at 358.

---

[10] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

14

## ANALYSIS

### I.    The Exhaustion Requirement

Before seeking relief from the Court, Defendant is bound by a threshold requirement to exhaust administrative remedies by submitting a request to the warden to move for compassionate release on their behalf, or by waiver after a "lapse of 30 days" after a request to the warden has been made. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)). However, if the Government does not invoke the exhaustion requirement, it is waived. *See Ward*, 11 F.4th at 361; *see also McLean*, 2022 WL 44618, at *1 (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

Here, Defendant submitted a request to Warden R. Thompson on May 10, 2025, requesting compassionate release (Dkt. #176 at p. 1). The government did not invoke the exhaustion requirement; thus, the matter is waived.

### II.    Defendant Cannot use § 3582(c) to Challenge the Duration of His Sentence

Regarding Defendant's motion for sentence reduction under 18 U.S.C § 3582(c)(2), "the supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release." *Fernandez v. United States*, No. 24-556, 2026 WL 1485476, at *1 (U.S. May 28, 2026). Defendant "cannot use § 3582(c) to challenge . . . the duration of his sentence. *United States v. Escajeda*, 58 F.4th 184, 187 (5th Cir. 2023). Specifically, Defendant cannot request that the Court recalculate his guideline range based on the corrected drug quantity and removal of enhancements. Nor can the Court readdress the firearm foreseeability, role enhancement, and drug quantity as these subjects directly regard the application of the law to the facts of Defendant's case. *See United States v. Harper*, No. 4:07-CR-244-SDJ, 2025 WL 2446282,

at *6 (E.D. Tex. Aug. 25, 2025) ("A motion for compassionate release is an improper vehicle for [Defendant] to contest . . . how the law was applied to the facts of his case for sentencing."). Defendant should have raised these issues on direct appeal under 18 U.S.C. § 3742. *Id.* This Court cannot provide relief on grounds that challenge the validity of his conviction.

### III.    The "extraordinary and compelling" Requirement

Defendant's reasons for a sentence reduction are inconsistent with the policy statement of U.S.S.G § 1B1.13. Therefore, Defendant does not offer any "extraordinary and compelling" reasons to warrant such a request. In support of the existence of an extraordinary and compelling reason, Defendant alleges that he suffers from several conditions, including diabetic retinopathy, diabetes mellitus, hypertension, and hyperlipidemia (Dkt. #176 at p. 4). He alleges his infirmities justify a reduced sentence on health-based grounds (Dkt. #178 at p. 4). However, these conditions are not "terminal [n]or substantially diminish[]" an individual's "ability to provide self care[.]" *See United States v. Chavez-Ceja*, No. 4:17-CR-30(1), 2020 WL 6688905, at *4 (E.D. Tex. Nov. 10, 2020) (denying compassionate release despite petitioner's diabetic retinopathy, Type 2 diabetes, diabetic neuropathy, and hypertension); *see also United States v. Howard*, No. 1:18-CR-56(7), 2023 WL 2815157, at *7 (E.D. Tex. Apr. 5, 2023) ("Due to its frequency, diabetes cannot be deemed "extraordinary" in order to merit compassionate release.").

Here, the U.S. Probation Office noted that Defendant is classified as a Care Level 2 patient in stable condition, with his diabetic retinopathy nearly resolved in the right eye and under observation in the left, receiving a minimum of quarterly clinician evaluations. Defendant has not shown how his medical condition requires long term or specialized care that is not being provided to him. Thus, Defendant has not identified a way in which he has suffered from a serious medical

condition, cognitive or functional impairment, or deterioration from the aging process. U.S.S.G. § 1B1.13(b)(1)(B).

Defendant is also not at imminent risk of an ongoing outbreak or infectious disease. Defendant alleges that his condition makes him "susceptible to vulnerabilities . . . based upon his approximate advanced age of 50[.]" (Dkt. # 176 at p. 4). He claims that "whether it be via COVID or some other potential communicable transmission of disease," it could be fatal to him. (Dkt. #176 at p. 4). He does not identify any risk from outbreak or emergency that exists at the time of his requested relief, nor has he shown how his condition makes him specifically susceptible (Dkt. #176). *See Harper*, 2025 WL 2446282, at *5 ("[T]he increased risk from an outbreak or emergency must exist at the time relief would be granted."). Defendant only speculates that his condition puts him at risk from the transmission of potential diseases (Dkt. #176 at p. 4). Thus, Defendant has not offered any extraordinary or compelling reasons for a sentence reduction.

## IV.    The § 3553(a) Factors

Even if there was an "extraordinary and compelling" reason for Defendant's sentence reduction, the sentencing factors under 18 U.S.C. § 3553(a) weigh against Defendant's release. Defendant claims that his "personal rehabilitation and exemplary conduct during incarceration weigh strongly in favor of a reduced sentence" (Dkt. #176 at p. 5). While Defendant has made efforts towards rehabilitation in prison, his conduct has not been exemplary. In its letter to the Court, the U.S. Probation office notes that Defendant was sanctioned for possession of an unauthorized item in 2019 and found guilty of possessing a hazardous tool in 2025. *See United States v. Perez*, No. 4:06-CR-00315-1, 2025 WL 1594281, at *10 (E.D. Tex. June 5, 2025) ("[M]aintaining 'clear conduct…' is unsubstantiated and is insufficient to constitute an extraordinary and compelling reason warranting a sentence reduction.").

Moreover, the fact that Defendant has committed a serious drug trafficking offense must also be weighed. *See United States v. Wedgeworth*, No. 1:18-CR-87(8), 2024 WL 4988370, at *10 (E.D. Tex. Dec. 4, 2024) ("Courts have long recognized, however, that drug dealing constitutes a danger and threat to the community."). Specifically, considering the Defendant's role in procuring, transporting and disseminating drugs, his familiarity with the trade and his use of a secret compartment in his car indicate he was regularly engaged in the sale of cocaine (Dkt. #87 at pp. 4-5). Combined with the community threat posed by drug dealing, there is a heightened need to deter this kind of criminal conduct.

Additionally, early release would not reflect the seriousness of Defendant's conduct or serve the interests of just punishment. While Defendant's rehabilitative efforts are admirable, the serious nature of the crime substantially outweigh the factors in Defendant's favor. The Motions will therefore be denied.[11]

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. #176) and Defendant's Motion for Sentence Reduction and Reconsideration under 18 U.S.C. § 3582(c)(2) Based on Amendment 821 and Correction of Drug Quantity (Dkt. #178) are hereby **DENIED**.

**IT IS SO ORDERED.**
**SIGNED this 24th day of June, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[11] For the reasons herein, the Court declines to reconsider its decision to deny a sentence reduction in its July 30, 2025 order (Dkt. #174).

18